Well, we will proceed with our next argument. This is Aixa Perez-Lang v. Premier World Marketing. Sherry Duran is here for the appellant. Joseph Glock is here for the appellee. And, Ms. Duran, you may proceed. Good morning, Your Honors. Thank you for being here this morning, and may it please the Court. My name is Sherry Duran, and I represent Aixa Perez-Lang, who is also the personal representative of her deceased husband's estate. I also represent Diana Camila-Lang, her daughter, and Sophia-Lang, another daughter. And this case has such a convoluted and complex procedural history that you would think almost that it would be something more, in order to decide it, it would require some kind of deep and very involved examination and would almost fit better on the, you know, a law school exam question or something like that. But what is really the essence of this case boils down to something quite simple, and that is that when this particular case was decided to be sent to the Dominican Republic back from the district court quite a few years ago now, the stipulation that was made, and this was determined by the court in the lower, in the district court, that the stipulation that that did not include one of the parties, Corporación, at that time, if Corporación was not a party to the stipulation, then by default, there was no such thing as a alternative adequate forum in the Dominican Republic at the time of the stipulation. And that continues to this day, where right now, we don't have an adequate and never did have an adequate forum in the Dominican Republic. And therefore, it's our position that the district court was required to allow us to come back to court under our Rule 60 motion and restart this case back from the beginning because it never had the actual adequate via viable alternative forum that all of us understood at the time that the original stipulation was made. Because I would like to point out also that when that stipulation was made, it was never pointed out that Corporación was not a party to that stipulation, and I certainly understood that Corporación was at that point in time. May I ask you a question? You don't dispute that you never served Corporación de Hoteles, correct? That is correct, Your Honor. And the reason was that as soon as we got into the court and the district court, we had immediate motions filed. And one of the primary thrusts of their argument was, in fact, that they were asking for it to be dismissed on the forum non-convenience. And while that was pending, and if we had to go to the Dominican Republic, we didn't need, in our opinion, to serve Corporación at that point in time. Now, because it was never pointed out at the time that the stipulation was made, that Corporación wasn't a party to that stipulation, we were never given the opportunity to then go ahead and get it served. And it was quite confusing for those of us who were there at the time because Mr. Antorcha, who was representing the other Florida corporations, had also made an appearance on behalf of Corporación. And he had never made a formal motion. There had never been a hearing. And the court had never given him the opportunity to withdraw from that appearance. So as someone who was there at the time and was participating on behalf of my clients, it was quite easy to understand at the time the stipulation was made that Corporación was, in fact, a party to that stipulation. Can I ask you a question regarding premier defendants? Did you ever proceed against premier defendants in the Dominican Republic courts? Well, Your Honor, I need to point out I am not a Dominican Republic attorney. I am only a U.S. attorney. I understand that. It's just a question of yes or no. Yes. Well, Ms. Perez-Lang and the attorney in the Dominican Republic did not pursue a case against the Florida corporations in the Dominican Republic. And I, again, am no expert in Dominican Republic law. But my understanding from discussions with the Dominican Republic attorney was that he thought it was quite – that Corporación was, in fact, the main entity. It was the only entity that he was confident he could get jurisdiction over in the Dominican Republic. And that at that point, since everyone understood that Corporación was, in fact, a party to the stipulation, there was no need to bring the Florida corporations in. And in particular, he thought if we got a judgment against an entity that was in Florida, there would be no way to enforce a judgment against a Florida corporation, whereas if he had a judgment against the entity that was there in the Dominican Republic, that would be the only entity that he, as a Dominican Republic lawyer, would be able to enforce any kind of a judgment upon. Again, I do not profess any particular expertise in Dominican Republic law. It's all from him. Let me ask you a question about form non-convenience, because the sort of theory of your argument here is that it would only have been appropriate to dismiss this case on form non-convenience if all of the defendants had joined in the stipulation. And I guess my question is, is that true? Because there still would have been a court in the Dominican Republic where this lawsuit could have been filed. All of the parties, well, at least the main parties, were in the Dominican Republic. The accident happened in the Dominican Republic. So did it really matter? I mean, certainly the stipulation made it easier to say that there was an adequate forum, but did it really matter? Was that really the key to the form non-convenience analysis? I'm sorry, Your Honor. Yes, it absolutely was the key, because the statute of limitations, which is known as prestación in the Dominican Republic, had already run. In fact, this case, in another iteration, had already gone to Puerto Rico, where my client and her daughters and the estate of her late husband were all residents of Puerto Rico and U.S. citizens. There had already been a case filed in Puerto Rico, and the judge in Puerto Rico had dismissed the case based on form non-convenience because he had already made the determination that the statute had run and there was no adequate alternative forum in the Dominican Republic because of the precise issue of the statute of limitations. And in that case, it was dismissed because the parties that were sued argued that there was no personal jurisdiction over those parties in Puerto Rico. We had no question about the personal jurisdiction of parties in Florida. The Florida corporations were in fact Florida corporations. And because we never reached any, we never got beyond the form non-convenience issue, we didn't have to raise any kind of argument about that. But back in the Dominican Republic, there was no way for my client to proceed in the Dominican Republic at that point in time because of the statute having run. Well, but I guess my point, though, is it just seems, and maybe I'm wrong about this, but it just seems like your argument is that because the defendants would have had a successful statute of limitation defense against you, that that necessarily means that there was no forum. But that seems to kind of put the cart before the horse, right? The fact that the defendants would have won the lawsuit, I mean, is that what form non-convenience is about? Who's going to win the lawsuit in the respective forms? No, no, your honor. Your honor, I think it's more, it's the, it's not a question of whether it would have won based on some kind of argument, whether it's jurisdiction or whether it's the question of statute of limitation. I believe that the forum non-convenience cases would, they have the test being whether the person going back to the forum is able to actually have the case heard and heard on the merits as opposed to just the mere procedural jurisdictional or a statute type of argument. And of course, that is, that is something that we would never have gotten an opportunity to address under the circumstances where the statute had already obviously run under Dominican law. And that's why it was, the defendants went out of their way to agree to the dismissal. And again, it was never pointed out at the time that the stipulation was made that this was going to be something that was, was basically turning primarily on the fact that everyone had stipulated that they were not going to raise the statute of limitations argument. That's why the lawyer in the Dominican Republic at the time that that was raised by Corporacion was completely blindsided because everyone assumed since nothing was ever said about Corporacion not being a party to the stipulation, everyone understood that Corporacion was, and it was absolutely a surprise when the argument was made in the Dominican Republic. Another reason why the Florida companies were not sued in the Dominican Republic is that the, actually the lawyer in the Dominican Republic was quite concerned because, you know, he understood this situation that we were dealing with coming from the United States. He was afraid that the judge in the Dominican Republic, since the law was obviously that the statute had run on that particular claim, would just do a sponte, decide that it was a, an issue of the statute being, being an issue there. And he wouldn't want to even listen to whether there was an agreement from a U.S. court, because again, Dominican judge wouldn't have had any obligation to follow an order or a stipulation or any kind of dismissal that came from the United States. Judge Holson, may I ask one more question? Yes, and I also have a question after you, Judge Labilla. Oh, thank you. Counsel, let me ask you a question regarding the Sociedad Anonima. And you, you allege that the Sociedad Anonima is a functional equivalent of a corporation, and you have a, a supporting affidavit establishing that Corporación Nogales is the functional equivalent of a corporation. But I, I'm a little concerned because the affidavit uses terms such as stock company and partners in describing the Sociedad Anonima. So how can we, can you explain how exactly the Corporación is associated, is the equivalent of a state law domestic corporation? I mean, do we have enough evidence to, to be able to say that? Well, again, I am, I am not admitted to practice in the Dominican Republic, and I don't, do not profess any particular expertise on Dominican law myself. So this is based upon our attorney from the Dominican Republic. And it's, you know, the closest thing that, and, you know, we have just had discussions about what essentially constitutes a corporation in the United States and, and how that might go back and forth and, and, and relate to this particular Sociedad Anonima in the Dominican Republic. And some of the basic things about a corporation seem to fit with the Sociedad Anonima in the Dominican Republic. For example, the limited liability, the fact that there are, you know, can be individual shareholders, things like that. It, it fits more the context of a corporate entity than say a partnership or something like that. And, and they do have partnerships in the Dominican Republic as well. And there was a distinction. And that's one of the reasons that the, the lawyer in the Dominican Republic also agreed that it probably, that it was most like a corporation. But the flip side of that is that whether it's, you know, it's the functional equivalent, or whether it's a juridical entity, you know, the, the only entity, the only citizenship that we could imagine this entity, whether you get into the various details, or you want to argue about a small item about whether it's the same as a US corporation or not, is that it could only really have its citizenship in the Dominican Republic, because we couldn't think of where else it would be. And because we have the plaintiffs who are in Puerto Rico. And because the only thing that would defeat the diversity is if the if the Dominican entity somehow had a citizenship in Puerto Rico. And that is clearly not the case, because it was already dismissed out of Puerto Rico for not having minimum contacts in Puerto Rico back in the first case, that that really, either from the functional equivalent, or from the juridical existence. And for purposes of establishing diversity and being confident that there is in fact diversity, we have no question in our minds that we're dealing with an entity that is not from Puerto Rico, and we're dealing with an entity that is not in a position to be, you know, defeating diversity in any way. And, and whether there is a small deviation between the exact equivalent US corporation versus the Sociedad Anonima and the Dominican Republic, it still is going to have citizenship in the Dominican Republic. And so as far as we can tell, it should not have an impact on any of the jurisdictional questions that might be raised this particular case. Mr. Wren, we had your argument. We'll now hear from Mr. Glock. Thank you. Good morning, Your Honors. May it please the Court. I represent the premier entities in this case. I will call the Court's attention to page three of the appellant brief, where they say, the premier defendants moved to dismiss the action for forum non-convenience and agreed to waive the applicable statute of limitations in the Dominican Republic. The district court granted the motion to dismiss from forum non-convenience and entered a final order of dismissal, expressly relying upon the waiver of the statute of limitations. If you drop down a couple of lines, it then says, Perez then filed suit in the Dominican Republic against Corporación. Now, it's not, I mean, I've listened to what counsel has said. I accept what she says, but the premier defendants are the ones that waived statute of limitations. The order was entered by Judge King, okay, which was back in 2008, I believe, Your Honor. The case has the same case number, but this is the second appeal from that case, but the court referred to the motion that had been filed and the forum non-convenience decision was based upon that. I don't understand why it is that they decided to sue Corporación in the Dominican Republic as opposed to premier. Premier was obviously doing business there. That was the reason why they were sued in the first place. So I guess the argument that I would make with a very simple argument is first that it was clear that the premier defendants are the ones that waived the statute of limitations. That was the basis of Senior Judge King's decision to grant the forum non-convenience motion for whatever reason, based on, I guess, the advice they got from lawyers down there. They sued the wrong party in the Dominican Republic and now what they're trying to do is fix it, but the fix cannot be through Rule 60. Before you move forward, is there any reason why the Rule 60b motion didn't go back to Judge King? You know, that's a very good question. I think, Judge, time-wise there was a period where Judge King had a medical condition, and as you know, Judge King has always carried a full caseload, even though he's a senior judge, but there was a period of time when he dropped down to about a that was during that period of time. But I can't answer that question, Your Honor. It looks like it was that time period. He's now back up to full speed, I believe. So, and then the Rule 60 argument, I don't understand. They seem to think that the wrong standard was applied. They don't suggest what the right standard was or how it would have impacted the result, but Rule 60 does say that there's leeway given to the court to determine whether or not to grant a motion there. The fact of the matter is, respectfully, Your Honor, is that they filed suit against the wrong parties in the Dominican Republic, and I don't know what advice they got or didn't get, but what they should have done was sued premier entities in the Dominican Republic. I have nothing further. A district judge on a Rule 60b motion, on the denial of a Rule 60b motion, can abuse this discretion if there are extraordinary circumstances to avoid an extreme and unexpected hardship in it. This is a pretty sympathetic case. The lady is unable to, you know, she's unable to bring her personal injury claim. Why isn't this, why doesn't this case fall within that category of extraordinary circumstances? Because as judge, I'm sorry, sir. To avoid extreme and unexpected hardship. Because as Judge Martinez pointed out, they do have a remedy, Judge, but it's just not against my clients. They have a remedy. And the answer is not that, you know, a case that started in 2005 should continue to be pursued against these clients because their lawyers pick the wrong forum and pick the wrong parties. Not our fault, Judge, but there is a remedy. And to the extent it helps on the other issues, the association is a corporation. There's no, the Dominican Republic is kind of slow in coming along to some of these things, but for a long period of time, you actually needed seven shareholders to have a corporation. It's only in the last couple of years that they've come up with things that are the equivalent of LLCs and that kind of thing. So I agree with counsel that it's clearly a corporation as opposed to a partnership. And I take it that you agree that it doesn't matter what test we apply, the functional test or the juridical test, either way, it's a corporation. Yes, Your Honor. Do you have any comment on my question about the forum about forum nonconvenience and whether this stipulation to waive the statute of limitations was dispositive on that analysis? Well, Judge, it's interesting because the fact of the matter is, is that we stipulated that we would not raise the statute of limitations with respect to the premier defendants, which were the only ones that defended the case. And had they brought the suit against premier defendants in the Dominican Republic, we would not have raised the statute of limitations. Our lawyers down there said, he said, are you sure? We sent them the papers. They could not have. I'm sorry, gentlemen, and Judge, I have nothing further unless the court has questions. Thank you, Mr. Glock. Mr. Rand, you reserve some time for rebuttal. Yes, Your Honor. I, first of all, would hope to maybe clarify a little bit of a question that was asked. And that is, I recall when this came back after the rule 60, that the judge recused himself. And it was not, there was never an issue. I don't think that it was ever mentioned anything about a health concern or anything else. He made a specific point that he felt like he needed to recuse himself in the context of what had happened in the past. So I absolutely do not remember anything with respect to a health concern. And of course, when he recused himself and it went to the next judge, there was no further discussion of it. The other thing is, is that the premier defendants, yes, were mentioned in the dismissal order. But was a final dismissal. And so it was understood at the time, after we had the stipulation, and with the fact of the dismissal of all of the defendants, that this was something that Corporación was part of. Again, the lawyer, Mr. Antorcha, had appeared on behalf of Corporación. All of the discussions we understood were defendants, plural. There was never anything during that particular discussion where they singled out Corporación and said, oh, by the way, Corporación is not a party to this. The reason that they didn't ever say that is because if Corporación had not been a party to this, then the argument on forum nonconvenience would have absolutely failed. Because without Corporación being a party to the stipulation, there is no forum nonconvenience applicable in the Dominican Republic because there is no viable alternative forum in the Dominican Republic without Corporación involved. Now, in terms of the standard applied, yes, we say that it's the wrong standard because the judge was applying an Rule 60 motion determination. And in the Rule 60 motion, the judge does have quite a wide range of discretion and can understandably take into consideration equitable aspects of what happened in this case. And he can make a decision based on a variety of factors there. And instead, it was assessed that he had to do it only on this appellate standard. And with the appellate standard being applied in the context of this Rule 60 motion, we say that that was an absolute abuse of discretion. What's the difference, Ms. Duran, between the two standards? Well, in the appellate standard, it only could be granted if it was absolutely required of the district court level. What can happen is that the judge can take into consideration the standards such as what Your Honor had referenced previously, things that are equitable considerations. And here we have a family that has suffered horribly and gone through years of trauma after the terrible accident. They've, through very good faith efforts on their part, tried to do what was necessary to go to the Dominican Republic when they were told that they had to. And they have followed the advice of counsel in the Dominican Republic. And there is no further remedy to this either, by the way. I'm not aware of any particular remedy that can happen as suggested by public counsel when they have done exactly what the court instructed them to do. They went, they got counsel in the Dominican Republic. They filed a lawsuit in the Dominican Republic. The attorney in the Dominican Republic made the determination about Corporación being the proper entity to sue there. Again, you know, he didn't know why the court in the Dominican Republic with a U.S. plaintiff and U.S. corporations would have the Florida corporations in the court in the Dominican Republic when he certainly wouldn't be able to enforce any judgment against them. He could only enforce the judgment against Corporación. And of course, at that point, we had no reason to understand that Corporación wasn't a party to the stipulation. And thus, he was blindsided at the time when Corporación came back and made the actual argument about the prescripción or the statute of limitations. Now, I also wanted to just mention really briefly that we just supplemented the record because everything moves very slowly in the Dominican Republic, but we finally, we did obtain a final judgment from the Supreme Court in the Dominican Republic. And that final judgment has in fact dismissed the case with finality. And so there are, there is no remedy. There is no place for my clients to go now if they're not allowed to proceed in a district court. And there are constitutional implications here too, because they've had such a deprivation of their rights to seek redress in the courts of the United States as U.S. citizens are entitled. Thank you. All right. Thank you, Mr. Ran and Mr. Glock. And that completes our arguments for this morning. And this court is in recess until nine o'clock tomorrow morning. Thank you, Your Honors. We're excused? Yes. Thank you.